CAGNEY *v.* CHECKER CAB MANFG. CORPORATION.

1. APPEAL AND ERROR—NEW TRIAL—NUMBER OF WITNESSES NOT CONTROLLING.

   That the greater number of witnesses were with defendant on the main issues is not of itself a reason for disturbing the verdict of the jury in favor of plaintiff.

2. MASTER AND SERVANT—COMMISSIONS—WEIGHT OF EVIDENCE.

   In an action for commissions on the sale of taxicabs in plaintiff's territory after he had been transferred therefrom, a verdict in favor of plaintiff, *held*, not against the weight of the evidence.

3. SAME—EXCESSIVE VERDICT.

   Where plaintiff's commissions on the sale of the taxicabs would have been more than $6,000 had he made the sale individually, a verdict for $1,850 under a provision of his contract that he was to accept less in proportion to the aid rendered by the factory cannot be said to be excessive.

Error to Kalamazoo; Weimer (George V.), J. Submitted January 11, 1929. (Docket No. 103, Calendar No. 34,086.)   Decided March 28, 1929.

Assumpsit by Emmett Cagney against the Checker Cab Manufacturing Corporation for commissions on the sale of taxicabs. Judgment for plaintiff. Defendant brings error. Affirmed.

*Adams & Van Horn* (*Mason & Sharpe,* of counsel), for appellant.

*Henry M. Kimball* and *Harry C. Howard,* for appellee.

North, C. J. This is a suit for commission which the plaintiff claims is due to him from the defendant, a Michigan corporation, located at Kalamazoo, Michigan, and engaged in the manufacture and sale of taxicabs. The plaintiff was in its employ as a salesman. He was authorized to operate in several States, including Iowa and Missouri, but was not given exclusive rights in this territory. He was to receive 5 per cent. on the net amount of sales for the first 50 cabs and 2½ per cent. on sales in excess of the first 50 cabs. A drawing account of $150 per month and traveling expenses were to be advanced to him, but both items were to be charged against earned commissions. On November 10, 1926, which was about a month after his employment, the plaintiff called upon the manager of the Red Top Cab Company in St. Louis, Missouri, and learned that this company was overhauling and repairing some of its cabs. Plaintiff was told it would not purchase any new cabs for a year. He left a circular which contained a cut of defendant's new model G taxicab. In his report to the home office the plaintiff advised "it would be a good idea to be in touch with this prospect." In the next three months plaintiff called at the Red Top Cab office in St. Louis at least three times, but he did not see the manager and did nothing towards making a sale. About the middle of February, 1927, the defendant's sales manager, Mr. Miller, talked with the plaintiff about going to Cincinnati, Ohio, and there taking charge of a taxicab company controlled by the defendant. The plaintiff claims that, because of prospective business in his territory, he was reluctant to give it up and to take charge of the taxicab company in Cincinnati; but he finally consented to do so at a salary of $250 per month and an allowance for expenses. Plaintiff

claims he did this with the assurance from Miller that, in the event of prospective sales developing in St. Louis or Des Moines, the plaintiff might go from Cincinnati and secure the business if possible. It is asserted by the plaintiff that this arrangement was only an oral modification of the existing written contract. The defendant disavows the claim of the plaintiff, and asserts that plaintiff's former contract was terminated at this time.

The Red Top Cab Company of St. Louis decided to purchase about 60 cabs, and on March 26, 1927, wrote to various manufacturers of cabs, including the defendant company. In April the plaintiff was in Kalamazoo and the treasurer of the defendant company showed plaintiff the letter from St. Louis, and said he thought it would be a good idea if the plaintiff would go to St. Louis. Upon his return to Cincinnati, plaintiff talked with the sales manager, Miller, but he stated he would write to the St. Louis company and that he did not think it was necessary for plaintiff to go to St. Louis at that time. Miller returned to Kalamazoo, and shortly thereafter telegraphed to plaintiff that he (Miller) was going to St. Louis. He made the trip, brought some representatives of the St. Louis company back to Kalamazoo to investigate defendant's cabs, returned to St. Louis, and there closed the sale of 62 cabs to the Red Top Cab Company. If this sale had been made by the plaintiff individually, his commission on the basis above indicated would have amounted to more than $6,000. However, plaintiff's written contract of employment with the defendant contained the following provision:

"It is also agreed that when it is necessary for the factory to aid the representative on special or

large deals, the representative is to accept less commission in proportion to the aid rendered by the factory. The amount of commission to be agreed upon at the time the deal is being closed.''

In June, 1927, and after the sale in St. Louis had been consummated, Miller caused a statement to be prepared which recited that in accordance with the previous verbal understanding the plaintiff released the defendant company ''of all commissions and obligations other than'' the salary of $250 per month for services at Cincinnati. The defendant offered proof tending to show that plaintiff signed such a release, but it was unable to produce it at the trial because it was claimed to have been lost from Miller's private office file. The plaintiff denied having signed such an instrument or having in any way released his claim for commission.

Not only did the defendant claim that when the plaintiff took up his work in Cincinnati he released all claim for commission on any future sales made by a representative of the company in the defendant's former territory, but it also claimed and offered proof tending to show that plaintiff had nothing to do with procuring or consummating the sale of the 62 cabs. These issues were submitted to the jury on the theory that if the plaintiff recovered at all, it would only be under the provision of the contract above quoted which provided that plaintiff's right to commission would be ''in proportion to the aid rendered by the factory'' in consummating the sale. The plaintiff had a verdict for $1,850. On writ of error to this court the defendant claims (1) the verdict was against the weight of the evidence, and (2) that the verdict was excessive.

These questions were presented to the trial court incident to the motion for a new trial, which was denied. The charge of the court was impartial and

clear in its detail. The appellant has assigned no error relative to it, nor do we think it could do so successfully. On the main issues the greater number of witnesses were with the defendant, but this is not of itself a reason for disturbing the verdict of the jury. We have given the record careful consideration. A further recital of the details would not be helpful. We are convinced that we would not be justified in holding the verdict was against the weight of the evidence or that it was excessive in amount.

The judgment is affirmed, with costs to the appellee.

FEAD, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred. SHARPE, J., did not sit.